**In re PINE LAKE VILLAGE APARTMENT CO., Debtor.**

**Bankruptcy No. 81–B–20737.**

United States Bankruptcy Court,
S. D. New York.

Feb. 25, 1982.

Burns & Fox, New York City, for debtor.

Zalkin, Rodin & Goodman, New York City, for Thomas J. Hartigan, Mortgagee.

## DECISION ON DEBTOR'S APPLICATION FOR FUNDS HELD BY MANAGING AGENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

A mortgagee creditor holding a secured claim contends in this controversy that a so-called "custodian" be compelled to continue to hold pre-Chapter 11 rent proceeds and security deposits it collected, characterized conjunctively as "cash collateral" under Code § 363(c) and as a contractual assignment contained in the consolidated mortgage and in a separate Management Agreement. The Chapter 11 debtor-in-possession claims that the consolidated mortgage contains no condition or covenant granting to this creditor an absolute right to the cash, which the debtor-in-possession declines to call "cash collateral."

### FACTS

The debtor's principal asset consists of an apartment complex located in Lindenwold, New Jersey, which is encumbered by a consolidated first mortgage held by the creditor, securing an indebtedness of approximately $14,000,000, against property valued in the debtor's schedules at $5,540,082. The Consolidation and Modification Agreement, dated May 12, 1975, requires that all rental income from the premises be applied solely to operating expenses and the payment of the outstanding principal, plus interest at the rate of 9% per annum, payable out of the net cash flow, as defined therein, until

March 1, 1982, when all unpaid principal and accrued interest will be due and payable.

In October of 1976, the debtor, its mortgagee and an independent managing agent who was the predecessor to John Erickson Co. (the displaced managing agent now in question) entered into a managing agreement whereby the managing agent was given all operational control of the premises and the collection and distribution of all rental income so as to assure the mortgagee that the monthly net cash flow, after operating expenses, repairs and maintenance would be remitted to the mortgagee in reduction of interest and principal and that no funds would be received by the debtor without the mortgagee's prior approval. The management agreement was consistent with the Consolidation and Modification Agreement whereunder the debtor committed the entire rental and other income from the premises exclusively to the payment of operating expenses and debt service until the mortgage indebtedness was fully repaid. The debtor was also required under the consolidated mortgage to enter into a management agreement for the mortgaged property on terms and conditions and with a managing agent satisfactory to the mortgagee.

In September, 1981, the debtor directed the managing agent, John Erickson Co., to withhold all further payments of net cash flow to the mortgagee's assignee, Thomas J. Hartigan, as Trustee of the Twenty Seven Trust. The debtor also demanded that John Erickson Co. turn over to it all accumulated net cash flow in Erickson's possession. When John Erickson Co. refused to comply with the debtor's demand, the debtor terminated the management agreement and advised the tenants to make rent payments directly to the debtor. The reason given by the debtor for Erickson's termination is that not enough money was expended for repairs and maintenance by the managing agent and that allegedly large amounts were siphoned off to the mortgagee under the label of net cash flow after the payment of operating expenses.

In December, 1981, the mortgagee commenced two actions in the Superior Court of New Jersey, Camden County, Chancery Division, against the debtor and others, seeking to foreclose the mortgage on the premises and to require the reinstatement of John Erickson Co. as manager. The mortgagee sought to have all rent collected by the debtor turned over to Erickson for application in accordance with the management agreement.

On December 14, 1981, the Superior Court entered a provisional order enjoining the debtor and others from expending any rent proceeds collected from tenants of the premises. Additionally, it was proposed that the Superior Court enter an order on December 23, 1981, reinstating John Erickson Co. as manager of the premises. However, the entry of such order was stayed by the debtor's filing of its petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. 1101 et seq., on December 23, 1981.

The mortgagee thereafter made an application to this court pursuant to Code § 305(a)(1) that it abstain from entertaining the debtor's Chapter 11 petition and to condition the debtor's use of post-petition rents collected from the premises on the ground that such funds constitute cash collateral for which adequate protection is required under Code § 363(c)(2). The mortgagee's motion for an order under Code § 305(a)(1) was denied, as was its alternative request to prevent the debtor's use of post-petition cash collateral, except that the debtor was directed to submit a proposal as to the manner in which it will apply the post-petition funds for operating expenses, repairs and maintenance so as to protect the mortgagee's interest in the premises. *In re Pine Lake Village Apartment Co.*, 16 B.R. 750 (Bkrtcy.1982).

The debtor then commenced this proceeding for a turnover of certain pre-petition funds collected and held by the former managing agent, John Erickson Co., on the ground that these funds constitute property of the estate within the meaning of Code § 541 and that the mortgagee has no per-

fected lien upon the funds, or any absolute assignment of the proceeds beyond their pledge as security, because the debtor claims that there has been no default under the mortgage.

The funds in issue consist of the following prepetition items:

(a) Rents and other income accrued and received in or before November, 1981, of approximately $259,022.11;

(b) Less net operating deficit during December, 1981, of approximately $30,966.74;

(c) Rents accrued and received in or before November, 1981, and deposited in escrow for payment of taxes and periodic insurance premiums, totalling approximately $55,000;

(d) Tenant security deposits of approximately $214,539.

The mortgagee claims to have title to the funds which the debtor seeks to compel John Erickson Co. to turn over to it and, in the alternative, asserts that the funds constitute "cash collateral" as described in Code § 363(c) that may not be used by the debtor unless the mortgagee is provided adequate protection for his interest in the proceeds. Additionally, the mortgagee urges that the interests of creditors will be better served by John Erickson Co. retaining the funds as a custodian, pursuant to Code § 543(d), so as to maintain the status quo.

## CUSTODIAN

The turnover of property of the estate by a custodian, as required under Code § 543(a)(b) and (c), may be excused under subsection (d) if the following conditions are met:

"§ 543.  Turnover of property by a custodian.

. . . . .

(d) The bankruptcy court may, after notice and a hearing, excuse compliance with subsection (a), (b), or (c) of this section, if the interests of creditors, and, if the debtor is not insolvent, of equity security holders, would be better served

by permitting a custodian to continue in possession, custody, or control of such property."

The mortgagee maintains that John Erickson Co., the managing agent, is a custodian who was at all times since 1976 in possession of the debtor's property for the purpose of managing it and enforcing the mortgagee's right to payment of the net cash flow under the consolidated mortgage. Hence, the mortgagee reasons that since the debtor is concededly insolvent, the court should exercise its discretion to permit the erstwhile managing agent to retain possession of the pre-petition funds now held by it in order to protect the mortgagee's interest in the funds pending the mortgagee's adjourned adversary proceeding seeking relief from the automatic stay against lien enforcement. The mortgagee asserts that it has a substantial interest in the funds because the indebtedness to it exceeds 99.6% of the debts in this case.

As the former managing agent of all of the debtor's premises, John Erickson Co. was an "agent ... under a contract ... authorized to take charge of property of the debtor ... for the purpose of general administration of such property for the benefit of the debtor's creditors;" within the meaning of the definition of a "custodian" under Code § 101(10)(C). Erickson was required to pay all of the trade creditors from the rent proceeds including expenses for repairs and maintenance, and remit all of the cash flow to the mortgagee in payment towards interest and principal. However, Erickson's contract was terminated by the debtor before the Chapter 11 petition was filed. The mortgagee contends that such termination was without justification. The debtor disputes this. Nevertheless, the propriety of such termination is not now at issue. What is significant is that, rightly or wrongly, Erickson's contract to manage the debtor's premises was terminated by the debtor. Therefore, Erickson was not the managing agent when the Chapter 11 petition was filed and is not now functioning as an agent for the purpose of general administration of the property for the benefit of the debtor's creditors.

In the earlier decision in this case, dated January 20, 1982, this court noted that even if Erickson had not been displaced by the debtor prior to the Chapter 11 petition, the debtor nevertheless, would be entitled to reject the management agreement pursuant to Code § 365(a) as an executory contract. Therefore, this court denied the mortgagee's request to reinstate Erickson as the managing agent of the debtor's premises. Having previously decided that the debtor was entitled to seek the services of another professional managing agent, and having dismissed the mortgagee's motion for abstention under Code § 305, this court declines to exercise its discretion to authorize the displaced custodian to remain in custody of the debtor's property, as permitted under Code § 543(d).

The legislative history with respect to subsection (d) of Code § 543 reveals that this subsection reinforces the general abstention policy in Code § 305 by permitting the bankruptcy court to authorize the custodianship to proceed notwithstanding the requirement under Code § 543 that a custodian turn over property of the estate. *House Report No. 95–595*, 95th Cong. 1st Sess. (1977) 370; *Senate Report No. 95–989*, 95th Cong., 2d Sess. (1978) 84, 85, U.S.Code Cong. & Admin.News 1978, p. 5787. Since this court rejected the mortgagee's invitation to abstain from accepting jurisdiction over a matter within its jurisdiction, the court will not now reinforce an abstention policy it did not follow.

### ASSIGNMENT OF RENTS

■ Under New York law, an assignment of rents clause in a mortgage is not self-executing and operates merely as a pledge of the rents, to which the pledgee does not become entitled until he asserts his right by taking affirmative steps, such as the appointment of a receiver to collect the rents for the benefit of the mortgagee, or obtaining an order for the sequestration of the rents. *Sullivan v. Rosson*, 223 N.Y. 217, 119 N.E. 405 (1918); *In re Brose*, 254 Fed. 664 (2d Cir. 1918); *In re Hines*, 88 F.2d 423 (2d Cir. 1937). See *Freedman's Saving Co.*

*v. Shepherd*, 127 U.S. 494, 502, 8 S.Ct. 1250, 1254, 32 L.Ed. 163 (1888). The commencement of an adversary proceeding for relief from an automatic stay in a bankruptcy case has been held to be the sort of affirmative action required of a mortgagee to perfect its interest in rent proceeds. *In re Sydney Kent and Ben Sherman d/b/a Hudson Valley Apartments*, 5 Bankrtcy Ct.Dec. 47, 19 C.B.C. 474 (Bkrtcy.S.D.N.Y.1978).

■ However, the property in question is located in New Jersey. In light of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the law of the situs of the real property, i.e. New Jersey, determines the mortgagee's entitlement to rent proceeds during the course of the mortgagor's bankruptcy proceeding. Unlike New York law, courts in New Jersey recognize that an assignment of rents clause in a lease may be self-executing upon default, as distinguished from a pledge of rents as a security device which requires affirmative steps on the part of the mortgagee. In *Stanton v. Metropolitan Lumber Co.*, 107 N.J.Eq. 345, 152 A. 653 (N.J.Ch.1930), the court stated that the right to rents under an assignment clause in the mortgage passes title to the assignee, making the rents directly recoverable from the debtor, but that this right should not be confused with a pledgee's entitlement to rents which requires execution upon foreclosure. Similarly, in *Paramount Building & Loan Ass'n v. Sacks et al.*, 107 N.J.Eq. 328, 152 A. 457, 458 (N.J.Ch.1930), the court noted that there was a difference between a pledge and an assignment, because delivery of possession, actual or constructive, is essential to a pledge, but transfer of title is not. However, by assignment, title is transferred although possession need not be. Furthermore, the court in *New Jersey Nat. Bank & Trust Co. of Newark v. Wolf*, 108 N.J.Eq. 412, 155 A. 372, 373 (N.J.Ch.1931) observed that an absolute assignment of rents is independent of the mortgage security, whereas a pledge of rents, as further security in the event of default, is conditioned upon the

pledgee entering into possession or appointing a receiver in foreclosure.

The rationale for interpreting a rents clause in a mortgage as an assignment rather than as a pledge was based upon an equitable theory that existed prior to *Butner v. United States*, supra, that as between a mortgagee and a trustee in bankruptcy, the rents collected after a default should belong to the mortgagee to cover a deficiency since the mortgagee is treated as the equitable owner of the property and that it would be inequitable to take the rents from what is his property and divide them among general unsecured creditors. *Associated Co. v. Greenhut*, 66 F.2d 428 (3rd Cir. 1933); *Bindseil v. Liberty Trust Company*, 248 Fed. 112 (3rd Cir. 1917). However, in *Butner v. United States*, the Supreme Court rejected the attempt to assert a federal uniform approach to the question of the mortgagee's interest in rents and profits simply because of a perception of the demands of equity, and said: (440 U.S. at p. 56, 99 S.Ct. at p. 918)

> "But undefined considerations of equity provide no basis for adoption of a uniform federal rule affording mortgagees an automatic interest in the rents as soon as the mortgagor is declared bankrupt.
>
> . . . . .
>
> The rule we adopt avoids this inequity because it looks to state law to define the security interest of the mortgagee."

In the present case, the mortgage clause contains the following language as to rents:

> "Now, Therefore, the Mortgagor, in consideration of the premises and *in order to secure the payment* of both the principal . . . and the interest . . . and the performance and observance of all the provisions hereof . . . *assigns*, transfers . . . *pledges* . . . and confirms unto the Mortgagee, all its estate, right, title and interest in, to and under any and all of the following property . . .
>> (i) the Premises;
>> (ii) the Improvements
>> (iii) all proceeds of the conversion . . . of any of the foregoing into cash . . .

>> (iv) *all leases* . . . including, further the right upon the happening of an *Event of Default*, to receive and *collect the rents thereunder.*" [Emphasis added]

Manifestly, whether construed as an assignment or pledge, the rents were intended to secure the debtor's obligations to the mortgagee in the event of a default. In *New Jersey Nat. Bank & Trust Co. v. Wolf*, supra, the mortgage contained a clause which read in part:

> ". . . said rents are in the *event of any such default hereby assigned* to the mortgagee." [Emphasis added]

Similarly, in *Stanton v. Metropolitan Lumber Co.*, supra, the mortgage terms provided:

> ". . . and said rents and profits are, *in the event of any such default hereby assigned* to the mortgagee . . .". [Emphasis added]

Both courts held that the rents were absolutely assigned to the mortgagee upon default. In *Stanton*, supra, 152 A. at pages 654–55, the court explained:

> "The assignment of them was additional security and independent of the mortgage security. *The assignment, though conditional, became absolute upon default* of the mortgage debt, and was valid and enforceable against the assignor; and the receiver has no advantage.
>
> . . . . .
>
> The assignment of the rents is distinct and independent of the means granted the mortgagee to collect them. The *title to them was to pass* to the mortgagee *upon default* whether the procedure was or not adopted, not that it was to pass only if it was set in motion." [Emphasis added]

In the instant case, the mortgage clause both assigns and pledges all leases of the premises in question, including the right to receive and collect rents in the event of a default. If this clause is viewed as a security pledge, consideration must also be given to the additional facts concerning the mort-

gagee's affirmative steps taken in an effort to perfect his interest. Not only did he commence a state court foreclosure action and an action to reinstate the managing agent in order to collect rents, but he also sought relief from the automatic stay in order to continue the state court foreclosure action.

■ Even if this mortgage clause is regarded as an assignment, a crucial element is missing; there has been no establishment of a default under the mortgage so as to trigger the assignment expressed under this clause. It was not argued that the debtor failed to make any payments as required under the mortgage. Instead, the mortgagee asserts that the debtor's removal of the managing agent constituted the default. The debtor maintains that such dismissal was justified because the managing agent failed to maintain the premises so as to create a larger net cash flow for the mortgagee. Absent a determination that the debtor defaulted under the mortgage, there is no basis for concluding that an assignment or pledge under the mortgage clause in question took effect.

■ The mortgagee also argues that under both the consolidated mortgage and the management contract the rents were absolutely assigned to him for the payment of mortgage interest and principal, after application of the rents to the payment of operational expenses, repairs and maintenance. However, neither party introduced the mortgage nor the management agreement in evidence, although a copy of the management agreement was submitted in the course of the mortgagee's previous application for abstention under Code § 305. Nonetheless, this argument carries with it a concession that the debtor has an interest in the rents collected to the extent necessary for the payment of operational expenses, repairs and maintenance of the premises in question. This property interest is sufficient to bring these funds within the broad concept of property of the estate, as expressed in Code § 541(a)(1) as "... all legal or equitable interests of the debtor in property as of the commencement of the case."

The scope of what constitutes property of the estate is very broad and includes all kinds of property and interests, tangible or intangible and causes of action. See *House Report No. 95–595*, 95th Cong., 1st Sess. (1977) 367–8; *Senate Report No. 95–989*, 95th Cong., 2d Sess. (1978) 82–3. Therefore, for the purpose of the debtor's turnover application, the debtor has an interest in the pre-petition funds held by the managing agent so as to regard these funds as property of the estate, subject to the mortgagee's interest in the rent proceeds as security under the mortgage.

Under Code § 363(c) a trustee, or a debtor-in-possession pursuant to Code § 1108, may use property of the estate in the ordinary course of business, subject to the requirement of obtaining the creditor's consent or court approval upon notice and a hearing with respect to cash collateral. Since the pre-petition rents held by the managing agent are property of the estate under Code § 541(a), which the debtor may use under Code § 363(c), and are subject to the limitations as to cash collateral and adequate protection for secured interests, it follows that the mortgagee's claim to absolute and unfettered title of these funds must fail.

## CASH COLLATERAL

When the debtor previously applied to this court for permission to use rents in its possession and post-petition rents for the operation, preservation and maintenance of the premises in question, it was ruled that such rental income was cash collateral within the meaning of Code § 363(c), and required court approval (which was given) for use only with respect to actual, necessary and ordinary expenses concerning the mortgaged property. *Pine Lake Village Apartment Co.*, 16 B.R. 750 (Bkrtcy.1982). The mortgagee's interest in the collateral was viewed as adequately protected because the application of the rent income solely to maintain and repair the mortgaged premises would enhance and preserve the value of the property which serves as collateral for the mortgagee's claim.

 The funds which are now the subject of this turnover application by the debtor are, with the exception of the tenants' security deposits, also regarded as cash collateral within the purview of Code § 363(c). The pre-petition rent collected by the former managing agent, less the net operating deficit, represent funds that were not applied by the erstwhile managing agent for operational expenses, repairs and maintenance. Absent Code § 363(c), these funds would be required to be turned over to the mortgagee as net cash flow under the mortgage.

The debtor has made no showing that the rents in its possession and the ongoing post-petition rents are insufficient to cover its actual, necessary and ordinary expenses regarding the mortgaged premises. However, to the extent that the debtor has insufficient funds to provide deposits required by utilities as a condition of continuing service to the debtor, it may apply to this court to use a portion of the pre-petition rents now held by the former managing agent. Such application and supporting documentation should be filed by the debtor, if at all, within ten days from the date of the order to be entered in connection with this decision. Upon a determination by this court, or if no such application is made, the remaining pre-petition rents may be turned over by the former managing agent to the mortgagee, subject to the payment of reasonable compensation for services rendered and costs and expenses incurred, as permitted under Code § 543(c)(2).

The tenants' security deposits, totalling approximately $214,539.90, are neither cash collateral nor property of the estate. These funds remain property of the tenants under the law of New Jersey. N.J.S.A. 46:8-19. Since the debtor is liable to the tenants for return of the security deposits and their administration, these funds shall be turned over to the debtor who is directed to open an appropriate escrow account, to be co-signed by the independent managing agent the debtor proposes to appoint. Until such appointment, the co-signatory of the escrow account shall be the mortgagee or his designated representative.

The funds deposited by the former managing agent in escrow for payment of taxes and periodic insurance payments, aggregating approximately $55,000, shall be turned over to the mortgagee, who shall continue to hold these funds in escrow and apply them solely towards their designated purpose, as required.

SETTLE ORDER ON NOTICE.