### In re MULTI–GROUP III LIMITED PARTNERSHIP, Debtor.

#### Bankruptcy No. 89–0260–TUC–LO.

United States Bankruptcy Court,
D. Arizona,
Tucson Division.

March 20, 1989.

---

Jonathon H. Randall, Evans, Kitchel & Jenckes, P.C., Tucson, Ariz., for movant UNUM.

Scott D. Gibson, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Tucson, Ariz., for debtor.

## OPINION AND ORDER

LAWRENCE OLLASON, Bankruptcy Judge.

The captioned case comes before this court on a notice and motion ("motion") filed by Union Mutual Stock Life Insurance Company of America ("UNUM") and denominated as: 1) Notice of nonconsent to use of cash collateral pursuant to sections 363(c)(2) and 546(b), and 2) Motion to prohibit use of certain funds and to sequester rents. According to the motion, a note secured by a first lien on debtor's apartment building was demonstrably in default before this Chapter 11 case was commenced. The amount now due on the note approaches $5.9 million. The question presented involves UNUM's right to the rents.

Arizona follows the lien theory of mortgages, A.R.S. Section 33–703, under which the mortgagee is not the owner of the property and is not entitled to its possession, rentals, or profits. Consequently, as occurred in the case at bar, mortgagees frequently require an assignment to themselves, through the deed of trust or other similar instrument, of the mortgagor's interest in the income of the encumbered property as additional security for the mortgage debt. Such an assignment manifests a reliance on the income for payments

on the note. The rentals assignment agreement under inquiry here states:

> This assignment is absolute and is effective immediately. Notwithstanding the foregoing, Assignor shall have a license to receive, collect and enjoy the rents, income, profits and benefits accruing from the premises until an "event of Default" (as defined therein) has occurred under the terms and conditions of that certain Loan Agreement of even date herewith (the "Loan Agreement"), by and between Assignor and Assignee, or under the Deed of Trust, and upon such default, such license shall cease automatically, without need of notice, possession, foreclosure or any other act or procedure, and all rents, income, profits and benefits assigned hereby shall thereafter be payable directly to Assignee....

Motion, p. 3.

In *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court held under the Bankruptcy Act of 1898 that state law controls this issue. Arizona Revised Statutes, Section 33–702(B), provides:

> A mortgage or trust deed may provide for an assignment to the mortgagee or beneficiary of the interest of the mortgagor or trustor in leases, rents, issues, profits or income from the property covered thereby, whether effective before, upon or after a default under such mortgage or trust deed or any contract secured thereby, and such assignment may be enforced without regard to the adequacy of the security or the solvency of the mortgagor or trustor by any one or more of the following methods:
>
> 1. The appointment of a receiver.
>
> 2. The mortgagee or beneficiary taking possession of the property, or without the mortgagee or beneficiary taking possession of the property.
>
> 3. Collecting such monies directly from the parties obligated for payment.
>
> 4. Injunction.

Paragraph 2 means that a mortgagee need not take possession of the property, but that doing so is one alternative. That interpretation would be clearer if the words "or without the mortgagee taking possession of the property" were deleted.

UNUM "exercised its right to receive the rents directly" by demand in a letter dated January 26, 1989, to debtor and the property manager. No rents were paid over to UNUM however, so on January 30, 1989, UNUM complained in Pima County Superior Court for the appointment of a receiver without notice to debtor. Instead, a hearing with notice was scheduled for February 7, 1989. UNUM's subsequent request for an interim receiver was set for February 3, 1989, at 11:15 a.m. The debtor petitioned for relief under the United States Bankruptcy Code 22 minutes before that hearing. Motion, pp. 4–5. UNUM's zealous but fruitless pursuit of its state law remedies were thereupon halted by the automatic stay of 11 U.S.C. Section 362(a).

The reasoning of *Butner*, though decided under prior law, is no less applicable in Code cases, and 11 U.S.C. Section 552(b) demonstrates a continuing historical concern of Congress that property rights should usually be controlled by state law rather than the "mere happenstance" of bankruptcy. Section 552(b) provides:

> Except as provided is sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Rents to which a security interest extends post-petition under Section 552(b) are "cash collateral" under 11 U.S.C. Section 363(a). *See also* S.Rep. No. 989, 95th Cong., 2nd Sess. 55, U.S.Code Cong. &

Admin. News 1978, p. 5787. Subsection 363(c)(1) forbids a trustee or debtor-in-possession from using cash collateral unless each entity with an interest therein consents or the court, after notice and a hearing, authorizes such use pursuant to Section 363. Cash collateral is thus generally payable only to the lender secured by the income producing property, and is not available for equitable distribution among the general unsecured creditors of the debtor.

■ A.R.S. Section 33–702 is the applicable non-bankruptcy law referenced in Section 552(b). This court must determine its impact upon the assignment of rents. The statute derives from the common law, which, in Texas, provides that an assignment of rents is not effective "until the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes some other similar action." *Taylor v. Brennan,* 621 S.W.2d 592, 594 (Tex.1981).

The court of appeals for the 5th Circuit has determined that the Texas rule is a perfection requirement within the meaning of the bankruptcy code. *See Matter of Village Properties, Ltd.,* 723 F.2d 441 (5th Cir., 1984). Other courts, construing statutes replacing the common law, have reached the same conclusion. *E.g., In re Gelwicks,* 81 B.R. 445 (N.D.Ill.1987); *In re Pine Lake Village Apartment Company,* 17 B.R. 829 (S.D.N.Y.1982). Applying a Washington statute similar to Arizona's, *In re Johnson,* 62 B.R. 24 (9th Cir.BAP 1986), observed:

> While we recognize that Northwest perfected its security interest in the normal sense through recordation of the deed of trust, we nonetheless conclude that Northwest had only an inchoate lien as to the rents at issue.

*Black's Law Dictionary,* 5th ed., defines "inchoate" as "imperfect; partial; unfinished; begun, but not completed, as a contract not executed by all the parties;" and one of the definitions there given for "perfected" is "enforceable."

Regardless of whether A.R.S. Section 33–702 is a "perfection" statute or an "enforcement" statute, it is subject to 11 U.S.C. Section 362(a)(4) and (5), which stays any act to "create, perfect, or enforce" a lien against property of an estate in bankruptcy upon the filing of a petition under 11 U.S.C. Sections 301–303. The automatic stay is one of the fundamental protections for both Debtor and creditors:

> Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of their claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. HR Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6297.

For the stay to have force, acts in violation should not be given effect. Nevertheless, courts have "allowed" post-petition perfection by so construing post-petition acts.

The Court of Appeals for the 5th Circuit reasoned that a motion to lift stay against foreclosure on the income producing property, and the pursuit of cash collateral, such as by objection to use, motion for sequestration, or complaint for turnover, are acts which establish that the mortgagee would have obtained perfection of an assignment of rents had not bankruptcy intervened. That court concluded that those acts constituted perfection post-petition. *See Matter of Village Properties, supra; In re Casbeer,* 793 F.2d 1436 (5th Cir., 1986).

Presumably, post-petition perfection has been allowed, despite the stay, in deference to state law and in accordance with *Butner* and Section 552(b). Except for the provision that allows perfection by "some other similar action," the Texas law applied in *Village Properties* is not substantially distinguishable from the Arizona statute. However, it was the "similar action" language upon which the 5th Circuit relied. *Cf. In re Oak Glen R–Vee,* 8 B.R. 213, 216 (Bkrtcy.C.D.Cal.1981) ("such other action as is deemed a substitute for possession"); *In re Association Center Limited Part-*

*nership,* 87 B.R. 142 (W.D.Wash.1988) (if state law has procedures for rent sequestration, that remedy is available for post-petition perfection). The Arizona statute allows an injunction, but contains no rent sequestration procedures and has no "similar action" clause. Its requirements are specific and cannot be met by implication.

UNUM's motion alleges, however, that its assignment is absolute and not subject to any form of perfection impediment. There is support for that proposition. *See, e.g., In re Ventura–Louise Properties,* 490 F.2d 1141 (9th Cir., 1974) (applying California law); *In re Matter of Stapp,* 641 F.2d 737 (9th Cir., 1981) (interpreting Nevada law). The cases turn upon whether the assignment is given as security. Distinguishing between an assignment that operates upon default and an assignment that is inoperative during a license which ceases upon default would prove troubling but for A.R.S. Section 33–702, which applies to assignments "effective before, upon or after a default" with equal force. Under Arizona law, assignments of rents obtain the same analysis whether characterized as "absolute" or otherwise.

■ UNUM alternatively alleges perfection by notice pursuant to 11 U.S.C. Section 546(b). The 5th Circuit concluded that Section 546(b) is an exception to the automatic stay which allows post-petition perfection of a security interest in proceeds, product, offspring, rents, or profits of the variety at issue before this court. *See Casbeer, supra,* 793 F.2d at 1442–44. 11 U.S.C. Section 546(b) provides:

> The rights and powers of the trustee under section 544, 545, or 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquire rights in such property before the date of perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

The *Casbeer* court held that for 546(b) to apply, Texas law must allow the creditor's perfection to relate back prior to filing, when the debtor-in-possession, or trustee, assumed the status of a bona fide purchaser pursuant to 11 U.S.C. Section 544:

> The perfection of those interests relates back to a time before bankruptcy for the purpose of Section 546(b); the perfection does not relate back to a time before bankruptcy for purposes of entitlement to rents. To allow otherwise would authorize the collection of pre-petition rentals, a result clearly at odds with *Taylor v. Brennan,* 621 S.W.2d at 594, and the warning in *Butner v. United States,* 440 U.S. at 55, 99 S.Ct. at 918 (quoting *Lewis v. Manufacturers Nat'l. Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961), that a party should not receive a "windfall merely by the reason of the happenstance of bankruptcy." *Id.*

A majority of courts follow the 5th Circuit, but this and other recent decisions conclude that Congress did not intend Section 546(b) as a vehicle for post-petition perfection of a security interest in rents. Its primary purpose "is to protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." HR Rep. No. 95–595, 95th Cong., 1st Sess. 371 (1977); S Rep. No. 95–989, 95th Cong., 2d Sess. 86 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5872, 6327. Congress contemplated that the statute would further the objectives of the Uniform Commercial Code, which allows a security interest perfected within ten days to enjoy priority over a security interest that was given later but perfected sooner. *Id.; see* UCC Section 9–301(2). *Accord, In re Association Center, supra; In re Prichard Plaza Associates Limited Partnership,* 84 B.R. 289 (Mass.1988). *Contra, In re Gelwicks,* 81 B.R. 445 (N.D.1987); *In re Morning Star Ranch Resorts,* 64 B.R. 818 (Co.1986); *In re Sampson,* 57 B.R. 304 (Tenn.1986);

*In re Fluge*, 57 B.R. 451 (N.D.N.D.1985). Moreover, recordation of the lender's contracted for interest in the rents imparts notice to anyone who may give value for the rents that there is or may be a senior claimant. Even the Trustee in bankruptcy has notice of such claimant, and should not therefore take as a purchaser under Section 544, which is a prerequisite to application of Section 546(b). This court holds that 546(b) does not apply to perfection of a rentals assignment.

Nevertheless, in defining the impact of post-petition implementation of a lender's interest in rents, the 5th Circuit in *Casbeer* significantly noted that such implementation cannot impact prior rents, because that would defeat the purpose of the rule, as articulated in *Taylor v. Brennan, supra:*

> It seems unlikely that mere words of assignment of future rents can entitle a mortgagee to claim rentals which have been collected by a mortgagor and mingled with its other property. Sound policy as well as every probable intention should prevent a mortgagee from interfering with the mortgagor's possession until the mortgagee takes steps to get the rentals within his control. To hold otherwise would be to impose unworkable restrictions upon industry in cases where mortgagors have been led to suppose that they might rightfully apply the rentals to their own business. *Id.* at 594 (Quoting *Prudential Insurance Company of America v. Liberdar Holding Corp.*, 74 F.2d 50 (2d Cir.1934)).

*See also* Osborne, G., *Mortgages* (2d ed. 1970), Section 150 at 252 (rentals assignment imposes no duty upon the mortgagee to collect rents and gives no assurance to the mortgagor that the mortgagee would collect the rents and apply them to the debt). If title to rents passed prior to compliance with the statutory or common law rule, tenants who have paid their landlord, and trade creditors relying upon such rents for compensation will have made a mistake of consequence. The statute, and the common law, contemplate interests entirely apart from those who would give value for an assignment.

■ Given that rationale, A.R.S. Section 33–702 is an artful refinement rather than an abrogation of the common law rule because each of the allowed enforcement methods places the rents in the lender's hands. It is only as to those rents that either law allows the assignment to pass title. Considering that under A.R.S. Section 47–9304(A), a security interest in money cannot be "perfected" but by possession in the secured party, it is probably not an accident that an assignment of rents can be enforced in Arizona only by measures that occasion the lender's possession. Thus, direct collection of rents pre-petition, or attempts to do so, under Section 33–702(B)(3) does not constitute perfection as to rents not so collected regardless of whether the debtor has petitioned for relief under the code.

■ Perfection is generally predicated upon providing notice and establishing priority. Possession clearly provides better notice than recordation, and notice problems are eliminated when the assignment is enforced in accordance with the statute. Notwithstanding that a lender who first recorded a rental assignment may prevail in an enforcement contest as to subsequent rents, such prior lender could not defeat a subsequently recorded lender's entitlement to rents already possessed pursuant to A.R.S. Section 33–702. At least in that limited sense, the statute also determines priority. Section 33–702 clearly behaves like a perfection statute and is such within the meaning of the Bankruptcy Code. None of its particular requirements have been met.

11 U.S.C. Section 552(b) does not, however, turn upon perfection or enforcement. It provides only that a security interest extending to rents pre-petition extends also to rents post-petition, insofar as state law allows. Under Arizona law, an assignment does not pass title to rents until enforced. Once enforced, it does not pass title to prior rents. A non-retroactive rental assignment cannot pass title to pre-petition rents unless implemented pre-petition. If the Section 552(b) condition that the rental assignment extend to rents means that the

lender must possess title to those rents "before commencement of the case," then, absent pre-petition enforcement, assigned rents are not cash collateral pursuant to Section 552(b).

If that section provides merely that a pre-petition security agreement should be implemented post-petition in accordance with state law, and state law requires perfection, a court should not assume such state law requirement was made without regard to the stay against perfection. *Cf.* A.R.S. Section 29–323 (providing that a voluntary petition in bankruptcy terminates the status of a general partner). State law may rely upon the stay when fashioning limitations on assignments of rents in order to enable a distribution among creditors of the protected class. Section 552(b) clearly does not provide for automatic perfection, yet that result would obtain if 552(b) were construed to obviate the automatic stay. Such construction would also run contrary to *United Savings Association of Texas v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

The Supreme Court granted certiorari in *Timbers* to determine whether undersecured creditors are entitled to compensation under 11 U.S.C. Section 362(d)(1) for the delay caused by the automatic stay in foreclosure on their collateral. *Id.* 108 S.Ct. at 629. Such a creditor, if unimpeded by bankruptcy, would be able to realize the fair market value of its security and earn interest thereon. The Supreme Court disapproved payments equal to the would-be interest earnings of an undersecured creditor because to do so would be unfair to unsecured creditors. *Id.* 108 S.Ct. at 631. Those "adequate protection" payments would be applied to the unsecured portion of the undersecured creditor's claim, would constitute a preference of that creditor's unsecured claim over the claims of other unsecured creditors, and would increase the secured portion of the undersecured creditor's claim. *Id.* 108 S.Ct. at 631–32. The Court noted that a creditor who obtained those adequate protection payments would be in the same position as a mortgagee with a perfected security interest in rents. *Id.* Therefore, it is clear that a

claim for rents based on an unperfected security interest is no different than a claim for "use value" of the collateral, and that the same concerns for equity of distribution are implicated.

If perfection were not stayed, the *Timbers* distinction between a perfected and unperfected security interest in rents would be of little impact, and the fundamental objectives of the Bankruptcy Code would be defeated. Post-petition perfection or enforcement must thus be preceded by relief from stay.

Neither *Timbers* nor A.R.S. Section 33–702(B) would prevent relief from stay to perfect or enforce an assignment of rents after collection of a sum that would ultimately be sufficient to pay unsecured creditors other than the assignee. Rents may then become cash collateral without constituting a preference and without diminishing the protections afforded by state law.

A first position mortgagee who obtains rents in excess of property expenses after relief from stay would be in the same position as it would be in after obtaining title under state law. The property could still prove necessary to reorganization, however, if capable, after a reasonable time, of generating income in excess of amortized payments on the value at confirmation, plus interest on that amount, less rents actually received. If the debtor-in-possession is unable, pursuant to its fiduciary duty, to adequately collect, sequester, and account for the rents in its regular monthly reports, an examiner can be appointed for that limited purpose without a showing of gross mismanagement. Should the project prove unable to succeed, conversion to Chapter 7, and the 11 U.S.C. Section 723 remedies, would likely be in the best interest of creditors regardless of the status of the rents at that time. For the reasons foregoing,

IT IS ORDERED that UNUM's security interest in rents from the Debtor's income producing property has not been perfected and is not enforceable.

IT IS FURTHER ORDERED that Debtor timely file its monthly reports, that such

**12**

reports accurately account for the rentals, and that they be served upon UNUM.