**In re PRINCETON OVERLOOK JOINT VENTURE, Debtor.**

**Bankruptcy No. 91–26757.**

United States Bankruptcy Court, D. New Jersey.

July 27, 1992.

As Amended Oct. 29, 1992.

Robert S. Burrick, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., Newark, N.J., for City Sav., FSB, the Resolution Trust Corp. as Receiver.

Stuart Komrower, Cole, Shotz, Bernstein, Meisel & Forman, Hackensack, N.J., for debtor.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### INTRODUCTION

This matter comes before the court on the motion of City Savings, FSB ("City Savings"), the Resolution Trust Corporation as Receiver, for an order pursuant to 11 U.S.C. § 363(c)(2) prohibiting the debtor, Princeton Overlook Joint Venture ("debtor"), from using cash collateral. This court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.[1] This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(M).

### STATEMENT OF THE FACTS

The debtor owns, operates and manages two four-story connected office buildings located in West Windsor, New Jersey. City Savings is a secured creditor of the debtor as the result of the extension of a $27.6 million construction loan to debtor. In return, debtor executed the following as security for the loan: a Multifamily Note, Multifamily Mortgage ("Mortgage"), Assignment of Leases, and Security Agreement, all of which were executed on April 24, 1986. It is undisputed that the mortgage on the aforementioned office buildings was recorded in the appropriate offices in Mercer County, New Jersey on April 25, 1986. In addition to the separately executed Assignment of Leases document, paragraph 26 of the Mortgage also contains an assignment of rents.

On October 18, 1989, the debtor was initially notified of its default under the terms of the loan commitment for refusal to close the extension loan. The debtor was again notified of its default on November 7, 1989. In the later notice, the debtor was notified that City Savings intended to commence foreclosure proceedings unless, at that time, the debtor was in a position to pay off the entire outstanding balance.

City Savings filed a foreclosure action against the debtor in the Superior Court of New Jersey, Chancery Division, Mercer County on November 28, 1989. On or about July 13, 1990, City Savings moved for the appointment of a rent receiver.[2] On November 9, 1990, the Superior Court

---

**1.** This matter was originally heard by the late Honorable Daniel J. Moore, U.S.B.J., District of New Jersey. By the consent of all parties, the Honorable William H. Gindin, U.S.B.J., Chief Judge, District of New Jersey, is issuing this opinion on this matter.

**2.** A receiver was never appointed. The reason for this is not clear from the record, however, the reason behind this is not necessary for the disposition of the motion at issue.

granted summary judgment in favor of City Savings in the foreclosure action. On April 5, 1991, a final judgment of foreclosure was entered. The Sheriff's sale was adjourned twice with the third sale date scheduled for October 9, 1991.

Eleven months after the court entered the summary judgment order, on October 8, 1991, the debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. Thereafter, on November 1, 1991, arguing that the rental income from the properties represented cash collateral, City Savings filed an Order to Show Cause with Temporary Restraints pursuant to 11 U.S.C. § 363(c)(2) seeking to prohibit the debtor's use of the rental income from the buildings. Additionally, City Savings filed a notice of perfection of security interest in rents pursuant to 11 U.S.C. § 546 on November 4, 1991.

On November 21, 1991, Judge Moore entered an order allowing the debtor to use the rents in accordance with the monthly operating budget and providing City Savings with a replacement lien to the extent that its lien was ultimately found perfected and enforceable, pending final decision by the court as to City Savings interest in those rents. The motion prohibiting the debtor's use of cash collateral is presently before this court.

## ISSUE

Whether a mortgagee with a recorded assignment of rents is required to take any further actions to perfect its interest in those rents?

## DISCUSSION

City Savings argues that New Jersey case law holds that an assignment of rents clause in the mortgage creates an absolute assignment, entitling City Savings to the immediate use and possession of those rents, and, therefore, that the rental income is cash collateral.[3]

The debtor argues that courts are reluctant to construe assignment of rents clauses as absolute assignments.[4] Furthermore, the debtor argues that City Savings failed to strictly adhere to the language of the assignment in the mortgage. Specifically, the debtor contends that the assignment was conditioned upon written notice of default, including a demand for the rents, in order for it to be perfected. The debtor also contends that in order for a mortgagee to have a perfected security interest in rents, it must take affirmative action prior to the filing of the petition in bankruptcy to perfect its interest in the rents, e.g. appointment of a rent receiver or possession of the premises. Finally, the debtor contends that the attempt by City Savings to perfect its interest by filing the motion under 11 U.S.C. § 546(b) is insufficient.

### I

11 U.S.C. § 552 provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to the property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents or profits of such property, then such security interest extends to such ... rents, ... acquired by the estate after the commencement of the case to the extent provided by such

**3.** City Savings relies on *In re Pine Lake Village Apartment Co.*, 17 B.R. 829 (Bankr.S.D.N.Y. 1982).

**4.** Debtor cites to the following cases in support of this argument. *In re Village Properties, Ltd.* 723 F.2d 441 (5th Cir.) *cert. den. Wolters Village Ltd. v. Village Properties*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984); *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289 (Bankr.D.Mass.1988); *In re Tripplet*, 84 B.R. 84 (Bankr.W.D.Tex.1988); *In re Winslow Center Associates*, 50 B.R. 679 (Bankr.E.D.Pa.1985).

security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case orders otherwise.

In this case, inasmuch as the parties executed the aforementioned documents prior to the filing of the petition in bankruptcy, any interest will extend to the rents if perfected under "applicable nonbankruptcy law".

██ The law of the situs of the property determines the mortgagee's entitlement to rent proceeds. New Jersey law, therefore, applies to this case. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Pine Lake Village Apartment Co.*, 17 B.R. 829 (Bankr. S.D.N.Y.1982). Historically, in New Jersey there have been two lines of cases dealing with the issue of the rights of a secured creditor with respect to rents. One line of cases held that a mortgagee is not entitled to rents until it takes possession of the property or has a receiver appointed. *Eisen v. Kostakos*, 116 N.J.Super. 358, 282 A.2d 421 (App.Div.1971); *Scult v. Bergen Valley Builders, Inc.*, 82 N.J.Super. 378, 197 A.2d 704 (App.Div.1964).[5] Other courts have held that where a mortgagee is entitled to rents upon default, the mortgagee need not be in possession. This holding, however, was based on a determination that the mortgage contained an assignment, and not a pledge.[6] *Paramount Bldg. & Loan Ass'n of City of Newark v. Sacks*, 107 N.J.Eq. 328, 152 A. 457 (Ch.Div. 1930); *New Jersey Nat. Bank & Trust Co. v. Morris*, 9 N.J.Misc. 444, 155 A. 782 (Ch. Div.1931); *Stanton v. Metropolitan Lumber Co.*, 107 N.J.Eq. 345, 152 A. 653 (Ch. Div.1930).[7]

Recently, in the case of *Midlantic National Bank v. Sourlis*, 141 B.R. 826 (D.N.J.1992), the District Court of New Jersey examined the existing New Jersey law with respect to assignments of rents. There, the court had before it the same issue as in the case at bar, i.e., whether the secured creditor, with a recorded assignment of rents, has a perfected interest in those rents without further pre- or postpetition action.

The court found that the existing case law in New Jersey did not squarely deal with the issue of perfection, but rather blurred the distinction between the perfection of an interest in rents and enforcement of that interest. Therefore, the court surveyed the existing case law from other jurisdictions relating to a secured creditor's interest in rents in bankruptcy.

Relying on the case of *In re Tucson Indus. Partners*, 129 B.R. 614 (9th Cir. BAP 1991), the court in *Sourlis* held that a properly recorded security interest in rents survives bankruptcy under 11 U.S.C. § 552(b) and that the rents were cash collateral of the mortgagee.

In *Tucson*, the Appellate Panel found that the Bankruptcy Court below incorrectly allowed the debtor unrestricted use of the rental income without any recognition of the secured creditor's rights thereto. The Appellate Panel was faced with the issue of determining whether, under Arizona law, the creditor had a secured interest in the rents, the date that the interest, if any, became perfected and the creditor's

---

5. The debtor relies heavily on an unpublished opinion by a Bankruptcy Court in this jurisdiction, *In the Matter of Arlington Associates*, Case No. 87–02054 (WFT). This court finds that case inapplicable as there, Judge Touhey found that the applicable state law was that of Florida. Under Florida law, at that time, a creditor with an interest in rents was required to take some sort of prepetition action evidencing a likelihood that the creditor would have successfully obtained possession of the rents absent the petition. As explained herein, this is not the definitive rule in New Jersey.

6. A pledge requires delivery of possession, either actual or constructive, however, transfer of title is not necessary, and usually, is not given. In the case of an assignment, title is transferred, however, possession is usually not transferred. *Paramount*, 107 N.J.Eq. 328, 152 A. 457.

7. These cases distinguished prior cases involving pledges of rents. In those cases the mortgage contained a description of land followed by a pledge of the "rents, issues and profits of the land" as further security. In those cases, the courts held that possession was a necessary requirement to entitlement to the rents.

rights to the rents with respect to 11 U.S.C. § 363.

The court in *Tucson* found that under Arizona law, a mortgage with an assignment of rents clause is perfected upon recordation without any further action. *Tucson*, at 618. The court then examined the three ways in which courts have dealt with the issue of assignments in rents.

The court declined to follow the rulings of other courts allowing trustees to avoid, pursuant to 11 U.S.C. § 544,[8] section 552(b)'s postpetition interest in rents. The court found that under the law of Arizona, a mortgage with an assignment of rents was perfected upon recording, and that the mortgagee was not required to take prepetition action to perfect its rights in the rents. *Tucson*, 129 B.R. at 620-21. *See also In re American Continental Corp.*, 105 B.R. 564, 572 (Bankr.D.Ariz.1989) ("[I]f the underlying document between the borrower and the lender is so drafted, the assignment of rents may provide for an absolute transfer of all rents to the lender. If the transfer is absolute, then recordation of the mortgage … would be the only act required." *Id.* at 572). *But see, In re Multi–Group III Ltd.*, 99 B.R. 5 (Bankr. D.Ariz.1989); *In re Kearney Hotel Partners*, 92 B.R. 95 (Bankr.S.D.N.Y.1988).[9]

The *Tucson* court was equally unpersuaded by courts which held that in the absence of prepetition enforcement, an assignee will be entitled to the postpetition rents if it takes affirmative steps in the bankruptcy court to terminate the debtor's use of the rents. These courts rely on 11 U.S.C. § 546(b), which allows for postpetition perfection of security interests where permitted under state law. *Tucson*, at 621–22. *See Virginia Beach Federal Sav. and Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir.1990); *In re Casbeer*, 793 F.2d 1436 (5th Cir.1986); *Matter of Village Properties, Ltd.*, 723 F.2d 441 (5th Cir. 1984) *cert. den. Wolters Village Ltd. v. Village Properties*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984); *In re American Continental Corp.*, 105 B.R. 564 (Bankr.D.Ariz.1989).[10]

Rejecting the aforementioned rationales, the court relied on language in *Butner*, to hold that a properly recorded security interest in rents survives the filing of a petition, by virtue of 11 U.S.C. § 552(b).[11] *Tucson*, 129 B.R. at 623–24.

Following the rationale used in *Tucson*, the court in *Sourlis* found that to require the secured creditor to take further affirmative action prepetition belies the fact that the creditor has already obtained and perfected its security interest.

 The question of whether a security interest exists in property, including rents, is determined by state law. *Butner*, 440 U.S. 48, 99 S.Ct. 914 (1979). Similar to Arizona law, the *Sourlis* court found that

---

**8.** 11 U.S.C. § 544 is known as the trustee's "strong arm power," which gives the trustee the ability to avoid certain transfers and obligations of a debtor.

**9.** Curiously, the Bankruptcy Court in *Multi–Group III Ltd.*, found that the law of Arizona required prepetition enforcement of the assignment of rents in order for the rents to be considered cash collateral.

**10.** 11 U.S.C. § 546(b) provides:

The rights and powers of a trustee under sections 544, 545 and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

Inasmuch as Arizona did not have a statute allowing for retroactive perfection, this statute was inapplicable in *Tucson*. Similarly, as discussed infra, inasmuch as there is no statute in New Jersey allowing for postpetition perfection to relate back to the date that the mortgage was executed, § 546(b) is inapplicable to the case at bar.

**11.** The court cited to language in *Butner* which stressed that a mortgagee's rights outside of bankruptcy should be preserved postpetition.

New Jersey law provides that once a mortgage is properly recorded, the mortgagee is protected against claims by subsequent lienholders.[12] N.J.S.A. 46:21–1; N.J.S.A. 46:22–1. Therefore, the court in *Sourlis* concluded that upon recordation of the mortgage, including the assignment of rents clause, the mortgagee had a perfected interest in the rents.

> Thus, upon recordation the creditor possesses a perfected security interest in realty. When a mortgagee records a mortgage with an assignment of rents clause, the mortgagee has a perfected security interest in the rents as of the date of recordation, and is protected against claims of subsequent assignees. State law may require affirmative action to *enforce* that right. *See In re Park at Dash Point*, 121 B.R. [850] at 856 and 859 [ (Bankr.W.D.Wash.1990) ]. Nonetheless, the mortgagee/secured creditor possesses a perfected security interest in the rents. *Id.* at 859 (emphasis added).

*Sourlis*, at 835–36.

After finding that a creditor was not required to take enforcement actions prepetition to perfect a valid interest in rents, the court in *Sourlis* then conducted an examination of the applicable law and the facts of the case in order to determine whether the secured creditor therein, Midlantic National Bank, possessed a valid security interest in the rents.

Judge Lifland examined the facts of the case and determined that a state court would enforce the mortgagee's contractual rights to the rents. "Here, the mortgagor has twice assigned the rents to the mortgagee, there is no suggestion that there is a competing assignee, recordation is complete and default is undisputed." *Id.* at 832. Consequently, the court found that if the mortgagee holds a perfected lien on rents under state law, the rents are cash collateral under 11 U.S.C. § 363 and protected under 11 U.S.C. § 552(b).

Furthermore, the court emphasized the distinction between the perfection of the mortgagee's interest and the enforcement of the rights under that interest.

> To equate enforcement or entitlement with perfection, thus requiring prepetition affirmative action on the part of the creditor to "perfect" its interest in rents, ignores the commercial reality of the transaction.

*Id.*, at 834. *See also In re Casbeer*, 793 F.2d 1436 (5th Cir.1986); *In re Rancourt*, 123 B.R. 143 (Bankr.D.N.H.1991); *In re Park at Dash Point, L.P.*, 121 B.R. 850 (Bankr.W.D.Wash.1990) *aff'd* No. C91–234C, WW–91–1087, 89–04508, 91–0003, 1991 WL 208812 (W.D.Wash. June 28, 1991); *In re Foxhill Place Associates*, 119 B.R. 708 (Bankr.W.D.Mo.1990); *In re Metro Square*, 106 B.R. 584 (D.Minn.1989). Essentially, Judge Lifland held that by including the assignment of rents in the mortgage and/or executing a separate assignment of rents prepetition, either or both of which were recorded, the creditor had already perfected its interest in the rents.

This court finds the rationale by the court in *Sourlis* appropriate. Therefore, if Paragraph 26 is deemed to transfer title, such assignment was perfected on April 25, 1986, the date that the mortgage was recorded.

## II

The court must now apply the holding in *Sourlis* to the facts of the instant case to determine whether, under New Jersey law, City Savings received an absolute assignment of rents which was properly perfected.

Examining New Jersey law, the court in *In re Winslow Center Associates*, 50 B.R. 679 (Bankr.E.D.Pa.1985), found the following with respect to the difference between a pledge and an assignment of rents.

> [T]he distinction between an assignment and a pledge of security is based on the precise wording of the pertinent mortgage clause.... If the pertinent clause

B.R. at 618.

---

12. In essence, recordation "perfects" the mortgagee's interest in the property. *Tucson*, 129

gives the mortgagee a vested interest in rents at the time of creation of the mortgage, the clause is construed as an assignment. Who has actual or constructive possession of the rents is irrelevant. The applicable mortgage provision is deemed a pledge security if the mortgagee's interest in the rents does not vest until the occurrence of some precipitating event such as default under the mortgage.

*Id.* at 681. *See also In re Pine Lake Village Apartment Co.,* 17 B.R. 829 (Bankr.S.D.N.Y.1982); *Paramount Bldg. & Loan Ass'n of City of Newark v. Sacks,* 107 N.J.Eq. 328, 152 A. 457 (Ch.Div.1930).[13]

Accordingly, this court must examine the precise language of Paragraph 26 to determine whether an assignment or a pledge was intended.

Paragraph 26 of the Mortgage provides: ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby directs each tenant of the Property to pay such rents to Lender or Lender's agents, provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by court-appointed receiver, Lender shall be immediately entitled to possession of all rents and revenues of the Property as specified in this paragraph as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only, provided however that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the property shall make such rents payable and pay such rents to Lender or Lender's agents on Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

The debtor contends that Paragraph 26 required City Savings to provide written notice to the debtor containing a statement that it exercises its right to the rents, as a condition to its entitlement to possession of the rents. The debtor argues further that in the absence of such specific written notice, "the assignment has not been triggered" and City Savings is not entitled to the rents. Debtor then states that the default notices by City Savings do not contain any statement of its intent to exercise its right to the rents.

---

**13.** In both *Winslow* and *Pine Lake,* the courts were interpreting New Jersey law.

This court disagrees with the debtor's interpretation of Paragraph 26. City Savings received a vested interest at the time that the mortgage was executed, and this interest was perfected on April 25, 1986, the date when the mortgage was recorded. By virtue of the assignment, City Savings possesses an ownership interest in the rents which became effective upon the execution of the mortgage and perfected upon recordation.

The debtor's argument falls squarely within the distinction set forth by Judge Lifland in *Sourlis.* The debtor is correct that Paragraph 26 requires written notice of City Federal's intent to take *possession* of the rents, i.e., to enforce its rights.

> Upon delivery of written notice by Lender to Borrower of the breach by Borrower ... and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, possession of all rents and revenues of the Property as specified in this paragraph ... provided however that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents.

The debtor is incorrect, however, in stating that the assignment was *conditioned* on compliance with this clause.

Paragraph 26 states:

> As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to lender all the rents and revenues of the Property, including those now due, past due or to become due.... [I]t being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

This clause refers only to possession and the enforcement of City Savings's rights to collect rents. This language in *no way* mitigates prior language establishing the fact that City Savings received a vested interest in the rents. Clearly, this language evidences the fact that the parties intended this to be an absolute assignment

of the rents and by recording the mortgage, City Savings perfected its interest in those rents. *Sourlis,* 141 B.R. 826 (D.N.J. 1992); *In re Somero,* 122 B.R. 634 (Bankr. D.Me.1991). "[T]he provisions in the mortgages and the assignments which give the mortgagor the right to use the rents and profits until an event of default does not in any way modify a mortgagee's already perfected security interest." *In re Somero,* 122 B.R. at 639.

### III

■ 11 U.S.C. § 546(b), quoted at length in footnote 10, *supra,* provides that a mortgagee may forestall the trustee's power to avoid an unperfected security interest if there is a state law which allows postpetition perfection to relate back to a prepetition event.

City Savings argues that even if the assignment is not perfected, the filing of the § 546(b) notice provided sufficient notice of the perfection. The debtor argues that the § 546(b) notice is insufficient to perfect City Savings' interest.

Inasmuch as this court has already determined that City Savings possesses a perfected interest in the rents by virtue of the recorded mortgage, this court need not address this issue in full. *In re Rancourt,* 123 B.R. 143 (Bankr.D.N.H.1991); *In re Park at Dash Point, L.P.,* 121 B.R. 850 (Bankr.W.D.Wash.1990) *aff'd* No. C91–234C, WW–91–1087, 89–04508, 91–0003, 1991 WL 208812 (W.D.Wash. June 28, 1991); *In re Foxhill Place Associates,* 119 B.R. 708 (Bankr.W.D.Mo.1990). The court does note, however, that under New Jersey law, there is no relation back statute. Therefore, City Savings would not be in a position to take advantage of § 546(b).

### IV

11 U.S.C. § 363(a) provides:

> In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, off-

spring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

As noted above, by virtue of the assignment, City Savings had a perfected ownership interest in the rents before the commencement of this case. Furthermore, the debtor has a collection interest in the rents, therefore, the rents are property of the estate under 11 U.S.C. § 541 and constitute cash collateral pursuant to 11 U.S.C. § 363(a).[14]

11 U.S.C. § 363(c) provides, in pertinent part,

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203 or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

This court holds that inasmuch as City Savings interest in the rents was perfected upon recordation of the mortgage, that interest continues postpetition without further action pursuant to 11 U.S.C. § 552(b), and that the rental income from the two buildings in West Windsor are cash collateral of City Savings pursuant to 11 U.S.C. § 363(a). *Sourlis*, 141 B.R. 826 (D.N.J. 1992); *Somero*, 122 B.R. 634 (Bankr.D.Me. 1991); *Multi–Group III*, 99 B.R. 5 (Bankr. D.Ariz.1989).

CONCLUSION

Based upon the opinion of this court that City Savings, RTC as receiver, possesses a perfected security interest in the rental income, of the two properties in West Windsor, New Jersey, this court further orders the parties to come before the court for further consideration with respect to debtor's use of rental income pursuant to 11 U.S.C. § 363.

14. While 11 U.S.C. § 541(b) provides that a power which a debtor exercises for the benefit of another is not property of the estate, that is not the case here. In the case at bar, in addition to utilizing the rental income to satisfy the mortgage obligation, the debtor was entitled to use the rents for maintenance, utilities, and expenses. Notably, the debtor was also entitled to retain the remaining profits. Therefore, the debtor's right to collect the rents constitutes an interest of the estate. *See Travelers Indemnity Company v. Grant Associates,* No. M–47 (RJW) 1991 WL 21228, 1991 LEXIS 1245 (S.D.N.Y. filed February 5, 1991) (The court held that although the rents were absolutely assigned and perfected prepetition under Georgia law, the rents were still cash collateral, as the mortgagee's interest does not exceed the debt and the mortgagee could not keep any rents beyond the amount owed by debtor.). *But see In re Fry Road Associates, Ltd.,* 64 B.R. 808 (Bankr. W.D.Tex.1986).