**MIDLANTIC NATIONAL BANK, Appellant,**

v.

**Theodore G. SOURLIS and Elaine Sourlis, Respondent.**

Civ. A. Nos. 91–1527 (JCL), 91–1528 (JCL).

United States District Court, D. New Jersey.

June 25, 1992.

Nola R. Bencze, Jamieson, Moore, Peskin & Spicer, Princeton, N.J., for Midlantic Nat. Bank.

828

Bunce D. Atkinson, Atkinson & Debarto-lo, P.C., Tinton Falls, N.J., for Theodore G. and Elaine Sourlis.

## OPINION

LIFLAND, District Judge.

Midlantic National Bank ("Midlantic") appeals from three orders of the United States Bankruptcy Court for the District of New Jersey. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons that follow, the court holds that Midlantic has a perfected security interest in rents which it may enforce in bankruptcy.

## FACTS AND PROCEDURAL HISTORY

The facts are undisputed. On June 14, 1988 Theodore and Elaine Sourlis ("the debtors") executed a note in favor of Midlantic in the sum of $1,800,000. The note was secured by a mortgage encumbering thirteen residential properties. The mortgage contained an assignment of rents as further security. In addition, a separate assignment of rents was given to Midlantic as additional security, and was recorded apart from the mortgage. Both the assignment and the mortgage were recorded in the appropriate county on June 20, 1988.

The debtors failed to pay the note when it became due on June 14, 1989. Midlantic instituted a foreclosure proceeding in the Superior Court of New Jersey on March 23, 1990. Midlantic did not seek to take possession of or manage the properties or seek the appointment of a receiver prior to the debtors' filing a voluntary petition in bankruptcy under Chapter 11 on July 2, 1990.

Midlantic's motion to restrain the debtors' use of the rents as cash collateral was denied by the Bankruptcy Court on October 22, 1990. Midlantic sought reconsideration, which was denied on December 6, 1990. Midlantic thereafter filed a motion for relief from the automatic stay and to sequester rents, which was denied on February 5, 1991. Midlantic appeals from those three orders.

## DISCUSSION

This court's review of the Bankruptcy Court's application of law is plenary. *In re*

*Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir.1989).

### 1. Cash Collateral

The agreed issue before the court is whether under New Jersey and federal bankruptcy law a mortgagee with a recorded assignment of rents must secure the appointment of a rent receiver or take possession or control of the rents pre-petition in order to authorize treatment of post-petition rents as cash collateral under § 363 of the Bankruptcy Code. In practical terms, this requires the court to determine how or whether a secured creditor can effectuate its interest in assigned rents where the defaulting party has filed a petition in bankruptcy.

Section 363 of the Bankruptcy Code provides:

(a) ... "cash collateral" means cash ... in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

(c)(1) ... the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or

lease as is necessary to provide adequate protection of such interest.

■ Pursuant to 11 U.S.C. § 552(a), property acquired by the estate (here the rents from the properties) after the commencement of the case is not subject to any lien arising from a security interest entered into prior to the commencement of the case. An exception exists under § 552(b), which provides:

... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court after notice and a hearing and based on the equities of the case, orders.otherwise.

Thus, under § 552(b) a pre-petition lien on rents continues in bankruptcy to the extent that the security interest expressly provides for an interest in the rents and the interest has been perfected under "applicable nonbankruptcy law". *See United Sav. Association v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 374, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988).

■ Under *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), state law determines the existence of a security interest in property, such as rents.[1] Therefore, New Jersey law applies to determine whether Midlantic had a perfected security interest in the rents from the properties as a result of the assignment in its recorded mortgage and its separately recorded assignment of rents. The parties agree that there is no case directly on point, since the New Jersey courts have not had occasion to address the question of whether a mortgagee with an assignment of rents must secure the appointment of a rent receiver or take possession or control of the rents in order to enforce its security interest in the rents.

At the initial hearing, the Bankruptcy Court determined that New Jersey law required a mortgagee to take affirmative action (in addition to filing a foreclosure action) to perfect an assignment of rents. The court based its decision on New Jersey law to the effect that a mortgagee is not entitled to collect rents until he takes possession of the property or has a receiver appointed. *Eisen v. Kostakos*, 116 N.J.Super. 358, 368, 282 A.2d 421 (App.Div.1971); *Scult v. Bergen Valley Builders, Inc.*, 82 N.J.Super. 378, 197 A.2d 704 (App.Div. 1964).[2] At the hearing on the motion for reconsideration, the Bankruptcy Court further noted that the language of the assignment which permitted Midlantic to, at its option, take possession, manage the properties and collect rents upon default read more like a conditional assignment or pledge than an absolute assignment of rents.

In *Eisen* the court referred to the well-established rule that a mortgagee is not entitled to rents or profits until he takes possession of the property or has a receiver appointed. *Eisen*, 116 N.J.Super. at 368, 282 A.2d 421.

In *Scult* the court also stated the rule that a mortgagee has no right to rents or profits until he takes possession of the

---

1. While *Butner* was decided under the former Bankruptcy Act, courts agree that its holding that state law applies to determine a mortgagee's interest in rents applies to the present Bankruptcy Code. *See e.g. In re Village Properties, Ltd.*, 723 F.2d 441, 445–446 (5th Cir.), *cert. denied sub nom Wolters Village, Ltd. v. Village Properties, Ltd.*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) (citations omitted).

2. Other jurisdictions have treated an assignment of rents clause in a mortgage and a separate assignment of rents as further security as "inchoate liens" which require additional action to perfect the interest in rents, i.e. make the lien "choate". *See e.g. In re American Continental Corp.*, 105 B.R. 564 (Bankr.D.Ariz.1989); *In re Multi-Group III, Ltd. Partnership*, 99 B.R. 5 (Bankr.D.Ariz.1989) (not followed by *In re Tuscon Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991); *In re Johnson*, 62 B.R. 24 (BAP 9th Cir.1986); *In re Association Center Ltd. Partnership*, 87 B.R. 142 (Bankr.W.D.Wash.1988).

property or has a receiver appointed. *Scult,* 82 N.J.Super. at 380, 197 A.2d 704. The court noted that a foreclosing mortgagee must timely exercise his rights with respect to his security or forego the right to sums arising out of it. *Id.* at 381, 197 A.2d 704.[3]

Midlantic disputes the applicability of *Eisen* and *Scult* to this case, since they did not involve a mortgage with an assignment of rents clause. In support of its position that a mortgagee with an assignment of rents has (upon recording) perfected its security interest in rents without further action, Midlantic relies on *Paramount Bldg. & Loan Ass'n v. Sacks,* 107 N.J.Eq. 328, 152 A. 457 (Ch.Div.1930); *New Jersey National Bank & Trust Co. v. Morris,* 9 N.J.Misc. 444, 155 A. 782 (Ch.Div.1931); *New Jersey National Bank & Trust Co. v. Wolf,* 108 N.J.Eq. 412, 155 A. 372 (Ch.Div. 1931); and *Stanton v. Metropolitan Lumber Co.,* 107 N.J.Eq. 345, 152 A. 653 (Ch. Div.1930).

In *Paramount,* the issue was the entitlement of three mortgagees to rents collected by a receiver in a foreclosure action. The mortgagees each held a mortgage which provided for assignment of rents upon default. The mortgagee in possession argued that the first and second mortgagee were not entitled to the rents notwithstanding their assignment clauses, since he was in possession of the property at the time that the foreclosure action was filed and the other mortgagees had taken no affirmative action (such as taking possession of the property or seeking the appointment of a receiver) entitling them to the rents. *Paramount,* 152 A. at 458. The court rejected this argument, holding that "as between several mortgagees, each of whose mortgage contains an assignment of rents", the first mortgagee was entitled to the rents upon default (and the filing of the foreclosure action, which was an explicit condition of the assignment to the first mortgagee). *Id.* at 459. The *Paramount*

court distinguished between an assignment and a pledge, noting that the mortgage language determines when the mortgagee is entitled to rents. The court distinguished *Freedman's Sav. Trust Co. v. Shepherd,* 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888), which had held that a mortgagee is not entitled to rents or profits unless he takes possession or moves to have a receiver appointed, since *Freedman's* did not involve an assignment of rents. *Id.* at 458.

*Morris* concerned the mortgagee's right to the appointment of a receiver under the mortgage based upon its assignment of rents. The court noted that the mortgagee, by virtue of the assignment of rents clause in the mortgage, was entitled to the rents accruing after default. 155 A. at 783. However, the court held that an assignment of rents clause in a mortgage did not alter the traditional principles which guide the court in determining whether to appoint a rent receiver. *Id.* Since the security in the case was not inadequate, and the mortgagor was not insolvent, a receiver was not necessary to protect the mortgagee's interest. *Id.*

In *Wolf,* the court held that an assignment of rents entitled the assignee to maintain an action for rents against the tenant. The court relied on *Stanton v. Metropolitan Lumber Co.,* 107 N.J.Eq. 345, 152 A. 653 (N.J.Ch.1930). In *Stanton,* the court determined that the mortgagee was not entitled to rents simply because it was a mortgagee, since a mortgagee is not entitled to rents accruing after default "unless and until he takes possession, personally or by a receiver duly appointed for that purpose." *Stanton,* 152 A. at 654. However, the court held that the mortgagee was entitled to the rents under its assignment of rents clause, which provided that the rents were assigned to the mortgagee in the event of a default. The court also held that the assignment of rents was additional

---

**3.** The *Scult* court relied on *Stewart v. Fairchild–Baldwin Co.,* 91 N.J.Eq. 86, 89, 108 A. 301 (E. & A.1919), which held that upon default, the mortgagee must take possession of the property to entitle him to collect rents. *Accord Stanton v.*

*Metropolitan Lumber Co.,* 107 N.J.Eq. 345, 347, 152 A. 653 (Ch.Div.1930); *Kirkeby Corp. v. Cross Bridge Towers, Inc.,* 91 N.J.Super. 126, 131, 219 A.2d 343 (Ch.Div.1966).

security independent of the mortgage security, which became absolute upon default in payment of the mortgage debt. The court noted that an assignment passes title whereas a pledge requires foreclosure to be effective.

Midlantic also relies on *In re Pine Lake Village Apartment Co.*, 17 B.R. 829 (Bankr.S.D.N.Y.1982) and *In re Winslow Center Assoc.*, 50 B.R. 679 (Bankr.E.D.Pa. 1985). In *Pine Lake*, the Bankruptcy Court, interpreting New Jersey law, held that an assignment of rents clause in a mortgage may be self-executing upon default. The mortgagee and the debtor had entered into a management agreement whereby the managing agent collected the rents and applied them to the principal and interest of the debt. The debtor directed the managing agent to cease payment to the mortgagee and instead pay the rents to the debtor. The mortgagee commenced an action in the Superior Court of New Jersey to foreclose on the mortgage and to recover the rents received by the debtor. Shortly thereafter, the debtor filed a Chapter 11 petition. As in this case, the mortgagee sought to restrict the debtor's use of post-petition rents as cash collateral, which was denied. The debtor then commenced a proceeding to compel the turnover of pre-petition rents collected by the managing agent, arguing that the rents were property of the estate. The mortgagee objected, claiming that it had title to the funds. The court determined that under New Jersey law an assignment of rents clause in a mortgage may be self-executing upon default, citing *Stanton* and *Paramount.* 17 B.R. at 833. The *Pine Lake* court noted that in both of those cases the New Jersey courts distinguished between an absolute assignment, which passes title to the assignee, and a pledge, which requires possession. The court determined that the mortgage clause at issue contained language that indicated both an assignment and a pledge, but did not decide the issue since there had been no default in payment of the mortgage debt. *Pine Lake*, 17 B.R. at 835.

In *In re Winslow*, the mortgagee asserted that it had an absolute assignment of rents entitling it to the turnover of accrued rents. The District Court for the Eastern District of Pennsylvania noted that New Jersey law distinguishes between an assignment and a pledge, depending upon the language of the mortgage clause at issue. The court stated that under New Jersey law, a provision is considered to be a pledge "if the mortgagee's interest in the rents does not vest until the occurrence of some precipitating event such as default under the mortgage". *Winslow*, 50 B.R. at 681. The court further noted that, even if a clause grants the mortgagee an assignment, i.e. title, it constitutes only a security interest. *Id.* at n. 2. The court determined that the following language created a "vested interest in all rents as they accrued":

> Mortgagors hereby assign to Mortgagee any and all rents, issues and profits on the premises covered hereby, but Mortgagors shall be entitled to collect and retain the said rents, issues and profits until default hereunder, unless otherwise specifically provided.

*Winslow*, 50 B.R. at 681–82.

The Bankruptcy Court herein was thus confronted with two lines of New Jersey cases, i.e. cases relating to the actions that a mortgagee must take to entitle it to collect rents, and cases relating to whether an assignment of rents is, by its language, an absolute assignment or a pledge. The Bankruptcy Court was required to resolve the issue of the extent to which, under New Jersey law, Midlantic had a perfected security interest in the rents at the time that the bankruptcy petition was filed. These cases provided the court with little guidance, since neither line of cases addresses how a mortgagee perfects its security interest in rents; the cases address entitlement to the rents, i.e. enforcement of the mortgagee's interest. Under New Jersey law, a mortgagee must take affirmative steps, such as taking possession of the property or securing the appointment of a receiver, to entitle the mortgagee to collect rents arising from the mortgaged property. *Eisen, Scult.* However, also under New Jersey law, a mortgagee with an assignment of rents is entitled to enforce its

assignment and collect the rents upon default without taking possession of the property or seeking the appointment of a receiver. *Stanton, Winslow.*

The court finds these cases of limited value in resolving the present issue before the court, i.e. whether a mortgagee with a recorded assignment of rents must seek appointment of a receiver, or take possession or control of the rents pre-petition, in order to seek treatment of post-petition rents as cash collateral under the Bankruptcy Code. The aforementioned cases do not address the issue of what action, if any, is required for a mortgagee to perfect its security interest arising from an assignment of rents.

Further, the court believes that not only are the aforementioned cases unhelpful, but that they also blur the essential distinction between the concept of the existence and perfection of a security interest in rents and the concept of enforcement of that security interest. The concept of perfection involves the interests of a secured party vis-a-vis third parties, and recording serves to place such third-parties on notice of the existence of a secured party's interest. The concept of enforcement involves the relationship between the debtor, secured creditor and the collateral, and the steps that the secured creditor must take to enforce its rights in the collateral. In bankruptcy it is essential to observe this distinction, because the mortgagee's right to enforce its interest in rents outside of bankruptcy is no longer available to it because of the automatic stay, and because § 552(b) does not refer to enforcement, but rather looks to the extent to which the secured creditor has rights in the rents under state law.

■ The question before the court is whether a mortgagee with an assignment of rents should be forced to take possession, or seek the appointment of a receiver immediately upon default, at the risk of losing its right to rents (often the significant measure of the value of real estate in a commercial setting) upon the filing of a petition in bankruptcy. The Bankruptcy Court's interpretation of New Jersey law

and § 552(b) requires a mortgagee in New Jersey to race to the property and "take possession" (an uncertain obligation in the context of a large commercial or residential development such as we have in this case) or race to the state courthouse to file appropriate proceedings seeking foreclosure and/or appointment of a receiver, in the hope that it will accomplish its mission at the state courthouse before a bankruptcy petition is filed. This encourages a race to the courthouse, which in turn discourages workouts between the debtor and creditor.

Had Midlantic been granted relief from the automatic stay and then pursued its state court foreclosure action, the court sees no reason why the state court would not have enforced Midlantic's assignments and granted Midlantic rights in the rents assigned to it. Here, the mortgagor has twice assigned the rents to the mortgagee, there is no suggestion that there is a competing assignee, recordation is complete and default is undisputed. There can be no question that a state court would enforce the mortgagee's contractual rights to the rents. *Butner,* 440 U.S. at 56, 99 S.Ct. at 918, indicates that the same result should prevail in the Bankruptcy Court.

The court concludes that under § 552(b) such a state of facts clearly authorizes the Bankruptcy Court to treat the rents as cash collateral. Whether the Bankruptcy Court feels that the mortgagee is otherwise adequately protected, without restricting the debtor's access to rents as cash collateral, is an issue to be addressed by the Bankruptcy Court under § 363(e) and is not before me.

The foregoing analysis is consistent with the perfection/enforcement dichotomy referred to above and is consistent with the clear intent of § 363(c)(2) and § 552(b) to protect a secured creditor's rights in soft collateral such as rents.

The many courts that have addressed the scope of a mortgagee's interest in rents in bankruptcy have produced a varying body of law, due to the blending of the concepts of enforcement of an interest in rents and a security interest in rents that is perfected

as of the date of recordation.[4] *See In re Park at Dash Point L.P.*, 121 B.R. 850, 855 (Bankr.W.D.Wash.1990); *In re Vienna Park Properties*, 136 B.R. 43, 52 (S.D.N.Y. 1992); Sally A. Conti, *Assignment of Rents: There's Hope for Secured Creditors*, Vol. 3 No. 21 Bank. Counsellor ¶ 933 (October 1990). State law governs both perfection of a security interest in rents and enforcement of that interest in state courts, but distinction between the concepts is necessary in bankruptcy:

> If a security interest is unenforced as of the date of the bankruptcy petition, then the secured creditor may not have an immediate right to possession of the collateral [under state law], but that does not render the security interest ineffective as against the trustee, whether the collateral be accounts, real property, rents, or otherwise.

*In re Park at Dash Point*, 121 B.R. at 858.

In a recent case, a Bankruptcy Appellate Panel described the three lines of cases relating to a secured creditor's interest in rents in bankruptcy. *In re Tucson Industrial Partners*, 129 B.R. 614, 620 (9th Cir. BAP 1991). The first line of cases holds that an assignment does not pass title to rents until enforced, and absent pre-petition enforcement, assigned rents are not cash collateral under § 552(b). *Id.* at 620–621 (citations omitted).

The second line of cases recognizes that a secured creditor's right to collect rents may not exist without pre-bankruptcy enforcement, but nonetheless entitles a secured creditor (such as an assignee of rents) to post-bankruptcy rents from the date that the creditor takes affirmative steps to terminate the debtor's use of the rents (i.e., through a motion for the sequestration of rents or a motion to restrain the debtor's use of the rents as cash collateral). *See e.g. In re Village Properties, Ltd.*, 723 F.2d 441 (5th Cir.), *cert. denied sub nom Wolters Village, Ltd. v. Village Properties, Ltd.*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984) and *In re Casbeer*, 793 F.2d 1436 (5th Cir.1986). Under this line of cases the secured creditor's right to rents post-petition is premised upon § 546(b) of the Bankruptcy Code, which recognizes post-petition acts to perfect security interests based upon state law. As noted *infra*, § 546(b) only permits post-bankruptcy perfection to the extent that state law provides a period in which perfection can be accomplished and relates back. New Jersey law provides no such relation-back relevant to this case.

The third line of cases holds that § 363 of the Bankruptcy Code reflects Congress' intent to protect a creditor's rights in rents as an "interest" in property under that section and as a security interest within the meaning of § 552(b), thereby providing the creditor with rights to the rents as cash collateral. The *In re Tucson* court found this reasoning achieved the correct result and rejected the notion that creditors lack any right to rents simply because they failed to enforce their rights to collect rents prior to the filing of the bankruptcy petition. *In re Tucson*, 129 B.R. at 623. Thus, the Bankruptcy Appellate Panel held that under Arizona law, a properly recorded security interest in rents survives bankruptcy under § 552(b), thereby discouraging a race to the courthouse upon the first hint of default. *Id.* at 624. The court noted that in those instances in which a creditor has not enforced a perfected security interest in rents prior to bankruptcy, this rule avoids a debtor's frustration of a creditor's interest in rents by filing a bankruptcy petition. Finally, the court stated that its conclusion is supported by the legislative history of §§ 363 and 552(b), discussed *infra*.

The court agrees. That to require a creditor to take pre-petition affirmative ac-

---

**4.** Thus, as noted *supra*, to determine the validity of a security interest in rents courts have referred to common law to the effect that a mortgagee's interest in rents (i.e. entitlement to rents) arises as an incident of the right to possession of real property. Upon default a mortgagee is entitled to take possession of the property, and collect rents arising thereunder. Thus the mortgagee's interest in rents is "inchoate" and cannot be enforced without affirmative action, such as foreclosure, obtaining possession or requesting the appointment of a receiver, which makes the interest "choate". *See supra* note 2; *In re Park at Dash Point*, 121 B.R. at 855.

834

tion in order to seek to enforce its interest in rents in bankruptcy proceedings blurs the distinction between a security interest in rents (i.e. the existence of a lien) and the right of a secured creditor to collect the rents upon default (i.e. enforcement). To equate enforcement or entitlement with perfection, thus requiring pre-petition affirmative action on the part of the creditor to "perfect" its interest in rents, ignores the commercial reality of the transaction. "[T]o postpone perfection of a security interest in rents until a creditor takes affirmative action defeats the purpose of obtaining the security interest in the first place." Conti, *Assignment of Rents, supra*, at 2. Thus, an assignment of rents as security for a mortgage loan provides a mortgagee with a perfected security interest in the rents as of the date of proper state-law recordation.

The fact that a creditor did not enforce that perfected interest prior to bankruptcy does not invalidate the interest, it merely stays the enforcement of that interest pending the bankruptcy court's determination of the party's entitlement to it.

*New York Life Insurance Co. v. Bremer Towers*, 714 F.Supp. 414, 418 (D.Minn. 1989). *See also In re Vienna Park*, 136 B.R. at 53; *In re Carley Capital Group*, 128 B.R. 652 (Bankr.W.D.Wis.1991) (interpreting North Carolina law). Thus, the fact that a creditor/mortgagee has not enforced its interest in rents prior to bankruptcy " 'does not preclude the lienholder's having rights under state law which ... rise to the level of a security interest in the rents sufficient to render the rents cash collateral.' " *In re Vienna Park*, 136 B.R. at 54, *quoting In re Park at Dash Point*, 121 B.R. at 859. The mortgagee's interest in rents may also be enforced in state courts. But since any action to enforce or perfect a lien is stayed by § 362(a)(4), the creditor must obtain relief from the automatic stay before it can act pursuant to state law to request a receiver or sequester the rents. *See In re Johnson*, 62 B.R. 24, 29 (9th Cir. BAP 1986).

Distinguishing between perfection and enforcement permits a creditor to enforce its security interest post-petition to prevent the unjust result of the debtor enjoying unencumbered rents throughout the pendency of the bankruptcy case. The Supreme Court noted this problem in *Butner*, and observed that this loss may be avoided by sequestering the rents or permitting immediate foreclosure. 440 U.S. at 56–57, 99 S.Ct. at 918–19.

In a case with similar facts, *In re Somero*, 122 B.R. 634 (Bankr.D.Maine 1991), the mortgagee moved to prohibit the debtors' use of rents and profits as cash collateral. The mortgagee had a recorded security interest in rents and profits arising from the mortgaged property, and also held a recorded assignment of rents which became effective upon default. The debtors were in default when they filed a petition in bankruptcy under Chapter 11. The mortgagee argued that it had a perfected security interest in the rents, and sought to restrict the debtors' use of the rents as cash collateral without providing the mortgagee with adequate protection. The debtors asserted that the rents could not be cash collateral because the mortgagee had failed, pre-petition, to take possession of the property or secure the appointment of a receiver. *Id.* at 637. The debtors referred to Maine cases which held that a mortgagee's right to rents depended upon taking actual possession or seeking the appointment of a receiver. *Id.* at 638. However, the court distinguished the debtors' cases, since they did not involve a mortgage containing an assignment of rents or a separate assignment of rents. *Id.* The court noted that Maine law was clear that where the mortgage document is silent, the right to rents must be derived from those rights that a mortgagee has incidental to foreclosure upon default. However, Maine law did not address the issue of whether a mortgagor and a mortgagee could, by agreement, modify the right to rents to entitle the mortgagee to enforce its right to rents without affirmative action. *Id.* The court also noted that under Maine law, so long as a mortgage is negotiated at arms length, courts are required to give effect to the agreement as written, and that under

Maine law an assignment of rents creates a valid interest in the mortgagee.

The court held that the mortgagee had perfected its interest in rents by recording the agreements in the proper county registry. The court then proceeded to determine whether the mortgagee's perfected security interest in the rents continued after the filing of the bankruptcy petition. *Id.* at 639. The court cited to the Legislative History of § 552(b):

> As a general rule, if a security agreement is entered into before the case, then property that the estate acquires is not subject to the security interest created by the security agreement. Subsection (b) provides the only exception. If the security agreement extends to proceeds, product, offspring, rents, or profits of property that the debtor had before the commencement of the case, then the proceeds, etc., continue to be subject to the security interest, except to the extent that the estate acquired the proceeds to the prejudice of other creditors holding unsecured claims.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 376–377 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6332, 6333. The court concluded that § 552(b) was intended to protect a secured creditor's interest in rents. 122 B.R. at 640. Moreover, the legislative history of § 363(a) established that "cash collateral" was intended to include "rents received from real property before or after the commencement of the case ... to the extent that they are subject to a lien." S.Rep. No. 989, 95th Cong. 1st Sess. 55 (1978), U.S.Code Cong. & Admin.News 1978, p. 5841. Thus, the court rejected the debtors' claim that the lien created by recording the security interest in rents was inchoate without pre-petition action to take possession or secure the appointment of a receiver, stating that the debtors misconstrued the intent of the Bankruptcy Code. 122 B.R. at 641. Noting that the Bankruptcy Code's definition of lien is broad, the court concluded that even if the mortgagee's lien on the rents were considered inchoate, that lien was included in the meaning of "lien" used in §§ 363 and 552, thereby entitling the mort-

gagee to adequate protection of its interest in the rents. *Id.* The court was satisfied that the mortgagee possessed a perfected security interest in the rents which continued post-filing within the meaning of § 552(b). *Id.* Thus, the court concluded that the rents were cash collateral under § 363, though it made no determination of the debtors' right to seek leave to use the rents as cash collateral. *Id.*

More recently, the United States District Court for the Southern District of New York in *In re Vienna Park, supra,* espoused forcefully the distinction between perfection and enforcement which this court has referred to *supra* as the key to proper analysis. It then referred to the "enforcement hurdle" posed by Virginia law (which required the assignees to gain possession of the property before they could realize their rights to the rental proceeds) as not precluding rights under state law which rise to the level of a security interest sufficient to render the rents cash collateral. The court relied upon *In re Park at Dash Point,* 121 B.R. at 859, as I have.

■ It remains to apply the perfection/enforcement distinction to the facts of this case. As noted *supra,* the validity of a security interest in rents is determined by state law. *Butner,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Thus, the court must determine what New Jersey law requires in order to perfect a security interest in rents.

■ New Jersey law recognizes perfection of an interest in realty, i.e. a mortgage or deed, by recording the document evidencing the interest with the office of the county recording officer in which the real estate is located. N.J.S.A. § 46:22–1. The creditor is then protected against claims of subsequent judgment creditors, bona fide purchasers and mortgagees. *Id.* Thus, upon recordation the creditor possesses a perfected security interest in the interest in realty. When a mortgagee records a mortgage with an assignment of rents clause, the mortgagee has a perfected security interest in the rents as of the date of rec-

ordation, and is protected against claims of subsequent assignees. State law may require affirmative action to enforce that right. *See In re Park at Dash Point,* 121 B.R. at 856 and 859. Nonetheless, the mortgagee/secured creditor possesses a perfected security interest in the rents. *Id.* at 859. Therefore, the court concludes that Midlantic acquired a perfected security interest in the rents on June 20, 1988 when its assignments were recorded.

■ Section 362 of the Bankruptcy Code enjoins the perfection or enforcement of a lien against the debtor or property of the estate. The secured creditor must move before the Bankruptcy Court for leave to enforce its rights.

Midlantic moved before the Bankruptcy Court for an order declaring the rents cash collateral subject to special protection, which the court denied. As noted *supra,* cash collateral includes:

> ... cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Thus, rents subject to a security interest as provided in § 552(b) are deemed to be cash collateral. Section 552(b) protects a pre-existing lien on rents in bankruptcy to the extent provided by the security agreement and state law. If a secured creditor holds a perfected lien on rents under state law, the rents are cash collateral under § 363 and protected under § 552(b). The fact that the secured creditor has not acted to enforce the lien under state law does not alter the conclusion that the creditor has rights "ris[ing] to the level of a 'security interest' in the rents sufficient to render the rents cash collateral". *In re Park at Dash Point,* 121 B.R. at 859; *In re Vienna Park,* 136 B.R. at 54; *In re Rancourt,* 123 B.R. 143, 148 (Bankr.D.N.H. 1991).

This result is in accord with the language of § 552(b), which refers to the scope of a security interest under the security agreement and the validity of the interest under state law. § 552(b) does not refer to the enforcement of the security interest under state law.

As the court noted in *In re Park at Dash Point,* a security interest in rents is analogous to a security interest in accounts. While a secured creditor may not collect payments on the accounts until enforcement, the creditor has a security interest in the accounts which is perfected by filing a financing statement. 121 B.R. at 859–860. In the event that bankruptcy intervenes, the secured creditor does not have the right to collect on the accounts without leave of the Bankruptcy Court; the automatic stay prevents enforcement action to collect such payments. *Id.* Nonetheless, the secured creditor has a perfected security interest in the accounts receivable, which constitute cash collateral. *Id.* at 860. "It follows that an unenforced assignment of rents constitutes an interest in rents sufficient to render the rents cash collateral when paid." *Id.*

■ Therefore, Midlantic has a right to adequate protection from the debtors' use of the rents in bankruptcy under § 363(c)(2) and (e). *See In re Vienna Park,* 136 B.R. at 55; *In re Tucson,* 129 B.R. at 624–625. As the court said in *In re Park at Dash Point,* the Bankruptcy Court has the authority under § 362(c)(2) to protect a mortgagee's security interest in rents as cash collateral, or by automatic sequestration of rents. 121 B.R. at 860.

As noted in *In re Vienna Park,* this conclusion is supported by the legislative history of §§ 363 and 552(b):

> Under present law, there is no similar limit on the debtor's ability to use, sell or lease soft collateral in the early stages of a reorganization. The protection of the secured creditor is left entirely to the judge. The debtor is usually able to obtain an *ex parte* order authorizing use, sale or lease of property quickly, the secured creditor then has an uphill battle to have it overturned. The result has

often been a serious erosion in secured creditor's rights because soft collateral is often easily dissipated or perishable. The provisions governing the right of the trustee or debtor in possession to use, sell or lease soft collateral also require that the secured creditor's interest be adequately protected. This is protection that secured creditors do not have today. The bill as written is a significant boon to secured lenders.

H.R.Rep. No. 598, 95th Cong. 1st Sess. 182–183 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5787, 6142–6143.

The foregoing analysis moots the distinction in older New Jersey cases between an assignment of rents and a pledge. New Jersey would have enforced Midlantic's rights under its mortgage, which provides:

As further security for payment of the indebtedness and performance of the obligations, covenants, and agreements secured hereby, Mortgagor hereby transfers, sets over and assigns to the Mortgagee:

a) All rents, issues and profits of the premises from time to time accruing, whether under Lease or tenancies now existing or hereafter created, reserving to Mortgagor, however, so long as Mortgagor is not in default hereunder, the right to receive and retain such rents, issues and profits ...

or under its assignment, which provides:

This assignment is made as additional security for the payment of a certain term note of even date herewith (the "Note") made by Assignor to Assignee in the sum of ONE MILLION EIGHT HUNDRED THOUSAND AND NO 00/100 ($1,800,000) DOLLARS with interest ...

and would have allowed it to collect rents immediately upon default. Thus, without regard to the Bankruptcy Court's assignment/pledge analysis, the court concludes that Midlantic had a perfected security interest in the rents at the time that the bankruptcy petition was filed, entitling it to protection of that interest in bankruptcy.

## II. Post–Petition Perfection

■ In the alternative, Midlantic argues that in the event that the court determines that it has not perfected its interest in rents it should be permitted to perfect its interest post-petition pursuant to 11 U.S.C. § 546(b) and to sequester the rents.

Section 362(b)(3) of the Bankruptcy Code provides that the automatic stay does not stay any act to perfect an interest in property subject to § 546 of the code. § 546(b) provides:

[t]he rights and powers of a trustee ... are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

"Generally applicable law" refers to non-bankruptcy law, including state law. The Third Circuit has held that § 546(b) should be narrowly construed. *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80, 85 (3d Cir.1989).

The court concludes that § 546(b) should not apply at all to a security interest in rents.

Because an assignment of rents is perfected when recorded, and recording perfects the interest as of the date of such recording (and not retroactively), § 546(b) has no application to the perfection of an assignment of rents. The enforcement actions of obtaining possession or seeking the appointment of a receiver are not acts required to accomplish perfection, and therefore those enforcement acts are not subject to § 546(b).

*In re Vienna Park*, 136 B.R. at 56, *quoting In re Park at Dash Point*, 121 B.R. at 861.

■ Moreover, § 546(b) is a time statute which applies only where the state law permits relation-back. *In re Association Center*, 87 B.R. at 146. *See also Johnson*, 62 B.R. at 29. There is no relevant New Jersey law which permits relation-back for

the perfection of a security interest in rents.